Decided 24 July, 1906.

**STATE ex rel. *v.* FROST.**

86 Pac. 177.

</div>

QUESTION FIRST RAISED ON APPEAL.

Subject to certain statutory exceptions, questions not presented to and ruled upon by the trial court cannot be considered by the supreme court.

For instance: A referee having returned a part of the testimony in a case, the action of the parties in submitting the cause without any proceeding to secure the balance of the testimony precludes the supreme court from considering the conduct of the referee.

From Grant: ROBERT EAKIN, Judge.   .

Statement by MR. CHIEF JUSTICE BEAN.

This is a contempt proceeding, instituted by the State, upon the relation of Bascom Glaze, against Herman Frost, for a violation by the latter of a decree of this court rendered in December, 1903, in which it was adjudged and decreed that the relator was entitled to a prior right, as against the defendant, to 50 inches of the waters of Squaw Creek, in Wheeler County, to be measured under a four-inch pressure at the head of his ditch, and enjoining and restraining defendant from in any manner interfering with or preventing such quantity of water from flowing in the natural channel of the stream to the head of the relator's ditch.   The relator was required by the decree to "maintain a tight dam below the head of his ditch of sufficient height to raise the water in his ditch to the required head" before he is entitled to the quantity of water awarded. This decree was regularly entered in the court below, and on October 22, 1904, the relator filed an affidavit in that court, alleging that he had complied with the decree on his part and charging that the defendant violated the same on the 26th,

27th and 29th of June, and the 8th of August, 1904, and at divers other times, by constructing dams and obstructions in the creek above the head of relator's ditch and thereby diverting the waters from their natural channel to such an extent that during the dates mentioned the relator only received from 15 to 20 inches at the head of his ditch. The defendant was required to appear and show cause why he should not be punished for contempt. He answered, denying that he had violated the decree referred to, and affirmatively alleged that the relator had not complied with such decree by maintaining a tight dam at the head of his ditch, but had carelessly and negligently used the waters of the stream and permitted such waters to flow down to his brother, who owned land on the stream below.

By consent of the parties the cause was referred to a referee to take the testimony and transmit it to the judge of the court for his consideration. After the testimony for the relator had been taken and two witnesses for the defendant examined, the referee was advised that the county would not pay or allow any referee or reporter's fees in the case, and thereupon he demanded that the parties pay or secure to be paid his fees for taking and reporting the testimony. The relator complied with this request and paid the fees for all testimony taken on behalf of the plaintiff, but the defendant declined to pay or secure to be paid the fees for taking his testimony, whereupon the referee refused to proceed further and reported the testimony already taken, together with a statement of the facts, to the court for its consideration. Upon the case coming on to be heard no objection was interposed because the testimony had not all been taken, and no motion was made for an order requiring the referee to proceed with the testimony or application made to take additional testimony; but the cause was submitted for decision upon the record as made. The court found the defendant guilty, and fined him $50 and costs, from which judgment he appeals.                    AFFIRMED.

For appelant there was a brief over the name of *Errett Hicks,* with an oral argument by *Mr. John Langdon Rand.*

For the State there was a brief and an oral argument by *Mr. Victor G. Cozad.*

MR. CHIEF JUSTICE BEAN delivered the opinion.

The error, if any, of the referee in refusing to proceed with the taking of the testimony until his fees were paid or secured to be paid, was waived, because not urged in the court below. If the defendant desired further to pursue that matter, he should have adopted some proper proceeding for that purpose in the trial court, and thus given that court an opportunity to pass upon the question, and if the ruling was not satisfactory he could have brought the matter here for review. But, without some decision or request for a decision by the trial court, there is nothing for us to consider.

Upon the facts two questions arise: First, whether the relator complied with the decree by maintaining a tight dam below the head of his ditch, so as to prevent the water from flowing on down the stream; and, second, whether the defendant interfered with the flow of the water, so as to prevent the required quantity from coming down to the head of the relator's ditch. These questions may properly be considered together.

J. M. Franklin testified that he assisted in the construction of a dam across the stream just below the head of the relator's ditch in June, 1904, and that such dam was absolutely tight; that after the dam was constructed there was no water in the stream for some distance below, except seepage water; that the dam was maintained by the relator during the irrigating season, except on the occasion of a cloudburst, when it was washed out, but was immediately replaced; that he (witness) was at the head of relator's ditch six or eight times between the 27th of June and the 9th of August, and assisted in measuring the water in the stream at that place on the 27th of June and on the 9th of August, and there was only from 13 to 20 inches therein; that on the dates he measured the water he visited the defendant's ditches above that of the relator, and found them "about as full of water as they could hold," and "had twice the amount of water that was in Mr. Glaze's ditch"; that during one of his visits he saw defendant putting a dam across the creek at the

head of his ditch, so as to divert the water from the stream into his ditch.  P. J. Morrison testified that he was present when the water was measured at the head of the relator's ditch on June 29th and on August 8, 1904, and there was only 15 inches on the first and 14 inches on the latter occasion; that there was no water below the dam for 300 or 400 yards where there was a small quantity on the bed rock, but not sufficient to form a continuous flow; that on the 29th of June the defendant's ditch was running full and carrying more water than relator's.  Finlay Morrison and the relator testified to practically the same state of facts as the other witnesses, but it is unnecessary to refer to their testimony in detail.  This evidence is uncontradicted, and shows clearly a substantial compliance by the relator with the decree of the court by constructing and maintaining a sufficient dam below the head of his ditch, and that the defendant diverted the water to the injury of the plaintiff and in violation of the decree and restraining order.  The judgment of the court below will therefore be affirmed.

AFFIRMED.

Decided 9 January, rehearing denied 20 March, 1906.
**GOODNOUGH MERCANTILE CO. *v.* GALLOWAY.**